UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY HEMPHILL, | No. C 09-0770 SBA (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| BEN CURRY, Warden, | |
| Respondent. | |

## INTRODUCTION

Anthony Hemphill filed this pro se action for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a prison disciplinary decision. This matter is now before the court for consideration of the merits of the petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Anthony Hemphill is serving an indeterminate life sentence in prison for his 1984 conviction of second degree murder. See Resp. Ex. 1. His habeas petition challenges a 2007 prison disciplinary decision that resulted in the loss of time credits. Hemphill contends that his due process rights were violated because (1) the disciplinary decision was not supported by sufficient evidence, (2) the disciplinary hearing was conducted by a biased decision-maker, and (3) he was impaired in his presentation of an actual innocence defense.

During a March 30, 2007 search of a cell occupied by inmates Hemphill and Rice, correctional officers found three bindles containing a substance later determined to be heroin.

Correctional officer ("C/O") Bernal described the circumstances of the discovery of the controlled substance in a crime/incident report: "While conducting the search I found three individual bindles of suspected black tar heroin. I found the suspected black tar heroin rolled up inside a top ramen noddle (sic) bag. The bag was located inside a pair of rolled up white socks under the pillow of the bottom bunk." Resp. Ex. 8 at 5. The substance was sent to a lab for testing. Prison officials later received a report from the California Department of Justice Forensic Laboratory indicating that the substance sent to the lab tested positive for heroin with a weight of 1.42 grams. See id. at 1.

On May 16, 2007, a rule violation report ("RVR") was issued charging Hemphill with possession of a controlled substance for distribution.[1] See Cal. Code Regs. tit. 15, § 3016(c) ("Inmates shall not distribute, as defined in section 3000, any controlled substance"); see also id. at § 3000 ("Distribution means the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; or the solicitation of or conspiring with others in arranging for, the introduction of controlled substances into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution"). The RVR described the circumstances of the discovery of the substance and noted that the substance had tested positive for heroin at the lab and weighed 1.42 grams. The RVR also stated that neither cellmate claimed ownership of the substance: "No drug paraphernalia was discovered and urine tests for controlled substances for both inmates were negative. The manner the heroin was packaged indicates possession of this heroin was for distribution." Resp. Ex. 9 at 1.

An investigative employee was assigned to help Hemphill on May 22, 2007. According to the investigative employee's May 30, 2007 report, Hemphill requested that inmate Rice, C/O Pelayo, and C/O Bernal be present at the disciplinary hearing. See id. at 4. The investigative employee summarized witness statements he obtained from Hemphill,

---

[1] A RVR also was issued to inmate Rice. The parties do not discuss the outcome of Rice's disciplinary proceeding, and it is irrelevant to the present petition.

2

1  Rice, Pelayo, and Bernal.  The investigative employee wrote that Hemphill had told him that
2  the substance found was not his, that he was housed in the upper bunk whereas the substance
3  was found on the lower bunk, and that his cellmate had already told another officer that it
4  was his (i.e., the cellmate's).  Inmate Rice had stated to the investigative employee that he did
5  not want to give a statement until after he talked to his own investigative employee.  C/O
6  Bernal had stated to the investigative employee that he decided to search certain cells after
7  smelling tobacco near that area, that he found the black tar in cell 118, and that he showed it
8  to other correctional staff.  C/O Pelayo had stated to the investigative employee that he had
9  waited outside the cell door as Bernal searched the cell, and that after Bernal found the
10 "'plastic wrapper that was rolled up in a sock which had small bags in it,'" Pelayo notified
11 correctional staff.  Id. at 5.

12 Correctional lieutenant Chavez conducted the disciplinary hearing on June 16, 2007.
13 See id. at 1.  Hemphill pled not guilty, stating that he was not assigned to the lower bunk of
14 the cell.  See id.  In response to questions from the hearing officer, Hemphill stated that the
15 heroin did not belong to him, that he did not know there was heroin in the cell or who it
16 belonged to, and that he did not use heroin.  See id. at 3.  Inmate Rice testified at the hearing
17 that he was assigned to the lower bunk in the cell and that he did not know the heroin was in
18 the cell.  Id.  The hearing officer wrote this about the two correctional officers Hemphill
19 wanted to call as witnesses:

> Officer A. Bernal was entered as a witness to the hearing.  Officer Bernal was not present at the institution, a telephonic interview was attempted.  Officer Bernal could not be contacted.  Nevertheless, the SHO noted the questions that HEMPHILL had prepared to ask Officer Bernal:
>
> Q: Did you escort me to the Sergeant's Office?
>
> Officer Pelayo was entered as a witness to the hearing.  Officer Pelayo was not present at the institution, a telephonic interview was attempted to no avail.  This SHO noted the questions that HEMPHILL had prepared to ask Officer Pelayo:
>
> Q: When you opened my cell at the 1745 unlock did you smell smoke?

Id. at 3.

At the conclusion of the hearing, correctional lieutenant Chavez found Hemphill

3

guilty of possession of a controlled substance for distribution. The finding of guilt was based on the 1.42 grams of heroin that was found in the cell occupied by inmates Hemphill and Rice. Id. at 1. The hearing office further explained:

> HEMPHILL's denial that he did not have knowledge of the heroin, coupled with the testimony of RICE in which he claims he had no knowledge of the heroin, evidence that neither inmate is willing to accept reponsibility (sic) for the narcotics. The heroin was located beneath a pillow of the bottom bunk thus giving quick and immediate access to either RICE or HEMPHILL. The fashion in which the narcotic was packaged is a clear indication that the intent of the occupants of Z118 was to distribute rather than for personal use. HEMPHILL's pretence of ignorance is not a viable defense.

Id. at 1-2. The hearing officer also determined that the absence of some witnesses did not require a continuance of the hearing on the grounds that: (1) the reporting employee who authored the RVR "would not bring new information or evidence to this hearing" and had not been called; (2) the absence of C/O Bernal and C/O Pelayo did not require a continuance because the specific questions that Hemphill said he wanted to pose to them "had absolutely no bearing" on his guilt or innocence. Id. at 2. The discipline imposed included a forfeiture of 130 days of time credits, loss of privileges for 30 days, and visitation restrictions. Id. at 1.

Hemphill filed unsuccessful inmate appeals. He also filed unsuccessful petitions for writ of habeas corpus in the state courts. The Monterey County Superior Court rejected Hemphill's state habeas petition in a short, but reasoned, decision. See Resp. Ex. 3. The California Court of Appeal and the California Supreme Court denied his habeas petitions without comment. See Resp. Exs. 6 and 7.

He then filed this action. Respondent filed an answer to the petition, and Hemphill filed a traverse. The petition is now ready for a decision on the merits.

**DISCUSSION**

A.  Standard Of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits

4

in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams (Terry) v. Taylor, 529 U.S. 362 (2000).

B.   Due Process Rights In Prison Disciplinary Proceedings

An inmate in California is entitled to due process before being disciplined when the discipline imposed will inevitably affect the duration of his sentence. See Sandin v. Conner, 515 U.S. 472, 484, 487 (1995). The process due in such a prison disciplinary proceeding includes written notice of the charges, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous to institutional safety or correctional goals, and aid to the accused where the inmate is illiterate or the issues are complex. Wolff v. McDonnell, 418 U.S. 539, 564-67 (1974).

The revocation of good-time credits does not comport with the minimum requirements of procedural due process in Wolff unless the findings of the prison disciplinary decision-maker are supported by some evidence in the record. Superintendent v. Hill, 472 U.S. 445, 454 (1985). There must be "some evidence" from which the conclusion of the decision-maker could be deduced. Id. at 455. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence. Id. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached" by the disciplinary decision-maker. Id. This standard is considerably lower than that applicable in criminal trials. See id. at 456.

C.   Hemphill's Claims

Hemphill argues that his right to due process was violated because (1) there was insufficient evidence to support the disciplinary decision, (2) the hearing officer was biased,

5

1  and (3) he was impaired in his presentation of an actual innocence defense.[2] Respondent
2  does not dispute that the <u>Wolff</u> and <u>Hill</u> protections were required for the disciplinary
3  proceeding here. Respondent contends that Hemphill has not shown a deprivation of any of
4  those required protections.

5      1.    <u>Sufficiency Of The Evidence</u>

6  Hemphill claims that the evidence was insufficient to support the disciplinary
7  decision. He asserts that he did not know the heroin was in the cell, that the heroin was in his
8  cellmate's property, that he was not allowed to access his cellmate's property and that his
9  urine test for drugs was negative. He also argues that the amount of heroin was more
10 "consistent with personal use . . . not an amount commonly associated with distribution of
11 narcotics," and that he was never seen physically possessing or distributing the heroin.
12 Traverse at 2.

13 Hemphill's arguments do not aid him because this court does not re-weigh the
14 evidence in evaluating whether the "some evidence" standard is met. Instead, this court
15 considers whether the state court's rejection of his challenge to the evidentiary sufficiency
16 was contrary to or an unreasonable application of clearly established federal law, as set forth
17 by the U.S. Supreme Court. Hemphill comes nowhere close to making the requisite
18 showing.

19 The Monterey County Superior Court correctly identified the "some evidence"
20 standard as the standard for judicial review and reasonably applied it. <u>See</u> Resp. Ex. 3 at 1-

---

[2] In addition to his due process arguments, Hemphill argues that prison officials did not hold the hearing quickly enough and therefore did not comply with the California Code of Regulations' time constraints for disciplinary hearings. The Due Process Clause only requires that prisoners be afforded those procedures mandated by <u>Wolff</u> and its progeny; it does not require that a prison comply with its own, more generous procedures. <u>See</u> <u>Walker v. Sumner</u>, 14 F.3d 1415, 1419-20 (9th Cir. 1994), <u>overruled on other grounds by</u> <u>Sandin v. Conner</u>, 515 U.S. at 483-84. <u>Wolff</u> does not set an outer limit on the time by which an evidentiary hearing must be held. The claim that time constraints were not met presents, at most, a claim for a state law violation. Federal habeas relief is not available for violations of state law or for alleged error in the interpretation or application of state law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).

2.[3]   The superior court explained:

> A review of the record shows the SHO's decision satisfies due process. Petitioner's guilt was based on the discovery of 1.42 grams of heroin in his cell in an area that could be quickly accessed by Petitioner or his cellmate (under the lower bunk pillow), neither inmate claimed ownership for the heroin, and the heroin was packaged in a way that suggested it was for distribution.

Resp. Ex. 3 at 1-2.

Here, the evidence included the RVR, the crime/incident report describing the discovery of the suspected heroin, and the lab test result confirming the substance was heroin. The presence of heroin in an area of the cell easily accessible to both cellmates provided "some evidence" to support the determination of possession of the heroin by one or both of the cellmates. The evidence showing that the heroin was packaged in three bindles provided some evidence to support the determination that the heroin was intended for distribution to others. Such evidence satisfies the "some evidence" standard, as the state court reasonably found. Despite Hemphill's assertion that the state court should have required proof beyond a reasonable doubt of his guilt, Hill expressly declined to require proof beyond a reasonable doubt or "any other standard greater than some evidence," 472 U.S. at 456. Hemphill did offer evidence and argument in his defense, but the fact that an inmate offered a defense did not mean that the hearing officer had to accept it as true. The fact that the heroin was found within the area of the cell considered part of the lower bunk's property area did not logically eliminate liability for Hemphill because both cellmates may have constructively possessed the heroin. The fact that the heroin was found in an area accessible to both cellmates makes this case factually analogous to Hill, where the Supreme Court stated the evidence was sufficient to support the discipline even though the correctional officer did not see which of three inmates assaulted another inmate and only saw three inmates departing the area after hearing a commotion. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the

---

[3] As the last reasoned decision from a state court, the Monterey County Superior Court's decision is the decision to which § 2254(d) applies. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

7

1 disciplinary board." Hill, 472 U.S. at 457; see, e.g., In re. Zepeda, 141 Cal. App. 4th 1493,
2 1495, 1498 (Cal. Ct. App. 2006) (determination that inmate possessed razor blades was
3 sufficient under "some evidence" standard even though cellmate admitted ownership of the
4 razor blades found in common area of cell accessible by both cellmates).  Although the
5 evidence could have led to another result for Hemphill, the evidence to support the
6 disciplinary decision was constitutionally sufficient.  The state court's rejection of Hemphill's
7 challenge to the sufficiency of the evidence was not contrary to or an unreasonable
8 application of clearly established federal law.  He is not entitled to the writ on this claim.

9       2.      Biased Decision-Maker Claim

10       Hemphill claims that his disciplinary hearing was conducted by a biased decision-
11 maker.  He asserts that the hearing officer was prejudiced and "under a conflict of interest."
12 Petition at 9.  He further asserts that, as a result of this bias, the hearing officer falsely stated
13 that Hemphill waived his rights, although he does not identify what rights those were and the
14 record shows no waiver of any rights.  In his traverse, Hempill states that the bias stemmed
15 from the fact that the "hearing officer had a previous encounter with petitioners (sic) brother
16 at another institution." Traverse at 3.  He reasons that, since neither cellmate admitted to
17 possessing the heroin and it could have been his cellmate's heroin, Hemphill's "disciplinary
18 hearing was prejudiced, biased, and was nothing more than the hearing officers vindictive
19 motives to reign absolute power and control over petitioner Hemphill, arbitrarily finding him
20 guilty without proof beyond a reasonable doubt." Id. (error in source).

21       The superior court acknowledged Hemphill's claim that the hearing officer had a
22 conflict of interest and was biased, and implicitly denied the claim.  See Resp. Ex. 3 at 1.
23 That determination was not contrary to or an unreasonable application of clearly established
24 federal law as set forth by the U.S. Supreme Court.

25       Wolff did not address the requirement of an impartial decision-maker.  Hemphill has
26 not identified, nor is the court aware of, any other Supreme Court case holding that due
27 process requires an unbiased decision-maker for a prison disciplinary proceeding.  Win the
28 absence of such a holding, Hemphill cannot show that the state court's rejection of his biased

8

decision-maker claim was contrary to or an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court. Thus, § 2254(d) bars habeas relief for him.

The Supreme Court has observed that a "'fair trial in a fair tribunal is a basic requirement of due process.' . . . This applies to administrative agencies which adjudicate as well as to courts." Withrow v. Larkin, 421 U.S. 35, 46 (1975) (citations omitted) (combination of investigative and adjudicative functions does not necessarily show a biased decision-maker); see also Morrissey v. Brewer, 408 U.S. 480, 489 (1972) (due process requires neutral and detached decision-maker for parole revocation hearing). Even assuming arguendo that this procedural protection necessary for administrative decisions applies to a prison disciplinary proceeding, Hemphill's claim would fail for lack of evidence of any actual bias. The fact that the hearing officer found Hemphill guilty does not itself show bias. As explained in the preceding section, there was sufficient evidence to support that decision. Further, adverse rulings alone almost never constitute a valid basis for a bias or partiality challenge. Cf. Liteky v. United States, 510 U.S. 540, 555 (1994) ("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."). The allegation that the hearing officer was biased due to an earlier unpleasant experience with Hemphill's brother is unsupported by any independent evidence. Even if there was evidence of such an encounter, Hemphill has not shown that it was of such a nature that the hearing officer would necessarily be biased against Hemphill. Hemphill is not entitled to the writ on his biased decision-maker claim.

        3.        <u>Presentation Of Actual Innocence Defense</u>

Hemphill argues that he was impaired in his presentation of his actual innocence defense due at least in part to a mental illness and illiteracy. This appears to be a claim that a staff assistant should have been appointed to assist him at the hearing.

Wolff's procedural protections include the provision of a staff assistant to the inmate,

9

1 but only in certain circumstances. "Where an illiterate inmate is involved . . . or where the
2 complexity of the issues makes it unlikely that the inmate will be able to collect and present
3 the evidence necessary for an adequate comprehension of the case, he should be free to seek
4 the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from
5 a[n] . . . inmate designated by the staff." Wolff, 418 U.S. at 570.

6     Hemphill's argument is unpersuasive. First, the actual innocence defense was
7 presented at the hearing. The challenge for Hemphill was that the hearing officer did not
8 believe him. Hemphill did present his case for actual innocence, as he stated in his plea at
9 the hearing that he was assigned to the top bunk, and had inmate Rice testify that he (Rice)
10 was assigned to the bottom bunk. The hearing officer specifically mentioned that the heroin
11 was beneath a pillow of the bottom bunk, but though that location gave both cellmates "quick
12 and immediate access" to the heroin. Resp. Ex. 9 at 1.

13     Second, the record contradicts Hemphill's claim of a mental illness. The correctional
14 officer who wrote up the RVR noted that Hemphill was "not a Mental Health Program
15 patient/participant at the CCCMS level of care" and "did not exhibit bizarre, unusual or
16 uncharacteristic behavior at the time of the infraction." Id. The hearing officer also noted
17 that Hemphill was not a patient/participant in the mental health services delivery system at
18 the time of the hearing. Id. Hemphill offers no independent evidence to show a mental
19 illness, let alone a mental illness of such severity that it impeded his ability to present a
20 defense.

21     Third, the record contradicts Hemphill's claim of illiteracy. Hemphill "read the RVR
22 aloud with no difficulty, [and] expressed a good understanding of the charge of 3016(c) and
23 the disciplinary process" at the hearing. Resp. Ex. 9 at 1. Hemphill's assertion of illiteracy
24 also is greatly undermined by his handwritten inmate appeal, three state habeas petitions,
25 federal habeas petition and traverse. Hemphill provides no evidence to contradict the strong
26 evidence of literacy. Moreover, although a staff assistant was not appointed to help him at
27 the hearing, an investigative employee was appointed to help him prepare for the hearing.
28 That investigative employee obtained witness statements from the correctional officers who

10

1  did the search and attempted to obtain a statement from inmate Rice to prepare for the
2  hearing. Under the circumstances, a staff assistant for the hearing was not required by Wolff.
3  Hemphill is not entitled to the writ on this claim.

4  D.  An Evidentiary Hearing Will Not Be Held

5  Hemphill requested an evidentiary hearing with the apparent belief that an evidentiary
6  hearing would be an opportunity for him to re-argue his defense to the disciplinary charge.
7  He is mistaken. An evidentiary hearing would not be of any value on the due process claim
8  that the evidence was insufficient because the very nature of that claim requires a reviewing
9  court to confine its inquiry to the record of the disciplinary hearing already held. See Hill,
10  472 U.S. at 455 ("the relevant question is whether there is any evidence in the record that
11  could support the conclusion reached by the disciplinary board").

12  Hemphill has not identified any other reason an evidentiary hearing is needed. A
13  district court may not hold an evidentiary hearing on a claim for which the petitioner failed to
14  develop a factual basis in state court unless petitioner shows that: (1) the claim relies either
15  on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases
16  on collateral review, or (b) a factual predicate that could not have been previously discovered
17  through the exercise of due diligence, and (2) the facts underlying the claim would be
18  sufficient to establish by clear and convincing evidence that but for constitutional error, no
19  reasonable fact finder would have found the applicant guilty of the underlying offense. 28
20  U.S.C. § 2254(e)(2). Hemphill has not shown that he diligently attempted, but was
21  unsuccessful, in developing the factual basis for his claims in state court. See Williams
22  (Michael) v. Taylor, 529 U.S. 420, 431-32 (2000). Nor has he shown that his case otherwise
23  fits within § 2254(e)(2). He therefore is not entitled to an evidentiary hearing.

24  E.  A Certificate Of Appealability Will Not Issue

25  A certificate of appealability will not issue. See 28 U.S.C. § 2253(c). This is not a
26  case in which "reasonable jurists would find the district court's assessment of the
27  constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).
28

11

## CONCLUSION

The petition for writ of habeas corpus is DENIED on the merits. The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 9/16/11

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ANTHONY HEMPHILL,

        Plaintiff,

v.

BEN CURRY et al,

        Defendant.

Case Number: CV09-00770 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 20, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Anthony Hemphill C-63328
Salinas Valley State Prison
P.O. Box 689
Soledad, CA 93960

Dated: September 20, 2011

    Richard W. Wieking, Clerk
    By: LISA R CLARK, Deputy Clerk

13